**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TOWN OF SALINA, NEW YORK,**

|  |  |  |
|---|---|---|
|  | **Plaintiff,** |  |
| **vs.** |  | **5:23-CV-748** |
|  |  | **(MAD/MJK)** |
| **CWP SYRACUSE I LLC,** |  |  |
|  | **Defendant.** |  |

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **HARRIS, BEACH LAW FIRM** | **BRENDAN M. PALFREYMAN, ESQ.** |
| 333 West Washington Street | **DAVID M. CAPRIOTTI, ESQ.** |
| Suite 200 | |
| Syracuse, New York 13202 | |
| Attorneys for Plaintiff | |
| | |
| **PRYOR CASHMAN LLP** | **NICHOLAS G. SAADY, ESQ.** |
| 7 Times Square | **TODD E. SOLOWAY, ESQ.** |
| New York, New York 10036 | **BRIAN S. HOFFMAN, ESQ.** |
| Attorneys for Defendant | **ITAI Y. RAZ, ESQ.** |
| | **JACOB ORGEL, ESQ.** |
| | **LAWRENCE P. KEATING, ESQ.** |
| | **PERRY MAX-EMILE AMSELLEM,** |
| | **ESQ.** |
| | **TODD B. MARCUS, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On May 23, 2023, Plaintiff Town of Salina filed an action in the Supreme Court of New

York, Onondaga County, against Defendant CWP Syracuse I LLC for alleged violations of Salina

Town Code. _See_ Dkt. No. 2. On June 16, 2023, Defendant removed the action to this Court. _See_

Dkt. No. 1. Presently before the Court is Plaintiff's motion to remand the case back to the

1

Onondaga County Supreme Court.  *See* Dkt. No. 22.  Defendant responded in opposition and

Plaintiff replied.  *See* Dkt. Nos. 26, 30.

On February 23, 2024, the Court stayed this action pending resolution of litigation in the

Southern District of New York that raised similar claims to those at issue in this case.  *See* Dkt.

No. 39.  On May 5, 2025, the Southern District of New York dismissed some of the claims in that

action and transferred other claims to this Court.  *See Palisades Ests. EOM, LLC v. Cnty. of*

*Rockland*, No. 23-CV-4215, 2025 WL 1295333, *2 (S.D.N.Y. May 5, 2025); *Palisades Estates*

*EOM, LLC et al. v. County of Onondaga, New York et al.*, 5:25-CV-605 (DNH/TWD)

(N.D.N.Y.).

As a result, the Court lifted the stay in this matter on July 8, 2025.  *See* Dkt. No. 45.  For

the following reasons, Plaintiff's motion to remand is granted.

## II. BACKGROUND

Plaintiff is "a duly constituted municipal corporation in the State of New York having

jurisdiction over the health, safety and welfare of matters within the geographical confines of the

Town of Salina, New York."  Dkt. No. 2 at ¶ 9.  Defendant is a foreign limited liability company

who owns and operates the Candlewood Suites hotel ("Candlewood").  *See id.* at ¶¶ 1, 10-11.

Plaintiff alleges that on May 5, 2023, New York City Mayor Eric Adams announced a

program to provide four "months of housing for individuals now in the care of New York City . . .

in rural and residential counties in Upstate New York . . . . "  *Id.* at ¶ 2.  In Defendant's notice of

removal, it expands on Plaintiff's complaint, explaining that "refugees seeking asylum are persons

comprised of racial minorities arriving from Latin American countries who have been entering the

United States across its southern border with Texas, and apparently Florida."  Dkt. No. 1 at ¶ 1.

"In 2022, the State of Texas began sending groups of Asylum Refugees to New York City and

other large cities where the mayor was of a racial minority background." *Id.* at ¶ 5.  Defendant

states that "[s]ince Spring of 2022, the number of Asylum Refugees arriving in New York City

has ballooned, with over 60,800 Asylum Refugees arriving in New York City." *Id.* at ¶ 7.

Plaintiff alleges that "[i]n anticipation of the influx of individuals entering Onondaga

County pursuant to" the program, the Onondaga Mayor, issued a local state of emergency order

"which prohibited any hotel in Onondaga County from contracting with external municipalities

for the purpose of providing housing or accommodations for migrants without a license issued by

Onondaga County." Dkt. No. 2 at ¶ 15.  On May 20, 2023, the Director of the State Legislative

Affairs of the City of New York "identified Candlewood as a location that would house

approximately 200 individuals for up to four [] months." *Id.* at ¶¶ 16-17.  As a result of Mayor

Adams' program, Defendant "entered into lawful agreements to provide temporary public

accommodations consistent with federal laws to a small number of Asylum Refugees.  The City

of New York bears the cost of such temporary public accommodations and transportation

thereto." Dkt. No. 1 at ¶ 9.  The Town's Director of Planning and Development visited

Candlewood to conduct an inspection on May 22, 2023.  *See* Dkt. No. 1 at ¶ 19.  While there, the

Director was told by Candlewood employees that Candlewood had been housing individuals in

excess of one year, but they had been evicted in anticipation of the New York City arrivals.  *See*

*id.* at ¶ 21.  The Director "issued an Order to Remedy Violation" for using the hotel as a long-term

residential facility and for converting certain spaces into an office space.  *Id.* at ¶¶ 22-23.

Plaintiff alleges that Defendant violated Sections 235-53A and 235-50A of the Town

Code by altering the physical arrangement of Candlewood and changing its use to a long-term

facility.  *See id.* at ¶¶ 25-28, 31-33.  Plaintiff asks the state court to enjoin Defendant from

participating in the program to house individuals from New York City as doing so will require Defendant to violate the Town Codes.  *See id.* at ¶¶ 35-37.

Defendant removed the action to this Court "pursuant to 28 U.S.C. §§ 1331, 1443, 1441 and 1446." Dkt. No. 1 at 1.  Defendant asserts that removal is appropriate under § 1443 because Plaintiff seeks to violate federal civil rights laws by enforcing the Onondaga County Executive Order through enforcement of local zoning laws.  *See id.* at ¶ 12.  The Executive Order requires that "No hotel, motel or owner of a multiple dwelling in Onondaga County is permitted to contract or otherwise engage in business with any other municipality other than the County of Onondaga (an 'external municipality') for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County." *Id.*.  The Executive Order also granted the Onondaga County Sheriff the power "to make limited stops" to notify persons suspected of transporting or housing migrants of the Executive Order.  *Id.* at ¶ 13.  Defendant contends that Plaintiff's "[c]omplaint enforces the [executive order] through selective prosecution and enforcement of facially neutral zoning laws, in violation of federal statutes such as Title II of the 1964 Civil Rights Act ("Title II") and the 14th Amendment Equal Protection Clause." *Id.* at ¶ 16.  Defendant asserts that the Executive Order and Plaintiff's complaint seek to compel Defendant to refuse to rent public accommodations to asylum seekers. *See id.* at ¶¶ 21-22.  Defendant also contends Plaintiff's actions impair its pre-existing and future contracts between Defendant and other entities.  *See id.* at ¶ 25.

Defendant also asserts removal is appropriate under 28 U.S.C. § 1441 because Plaintiff's complaint implicates federal issues arising under Title II, immigration policy, and the Fourteenth Amendment, Takings Clause, Supremacy Clause, and Contract Clause of the United States Constitution.  *See id.* at ¶ 31.

Plaintiff argues that removal was improper because (1) Defendant "itself is not being deprived of racial equality-related rights," (2) Defendant cannot bring a claim on behalf of the asylum seekers, (3) Defendant's arguments could be asserted in state court, (4) Defendant is not a state actor, and (5) the town zoning laws do not implicate federal issues. Dkt. No. 22-1 at 11-19. Plaintiff also seeks attorneys' fees, arguing that Defendant's removal was objectively unreasonable. *See id.* at 19-20.

### III. DISCUSSION

**A.    Removal**

*1. Section 1443(1)*

"Removal is appropriate under 28 U.S.C. § 1443(1) in cases where the defendant is 'denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States.'" *New York v. Smith*, 952 F. Supp. 2d 426, 430 (E.D.N.Y. 2013) (quoting 28 U.S.C. § 1443(1)). The Supreme Court has explained that the language used in the predecessor statute to 28 U.S.C. § 1443(1)—section 641 of the Revised statutes of 1874—was intended to include "laws comparable in nature to the Civil Rights Act of 1866." *Georgia v. Rachel*, 384 U.S. 780, 789-90 (1966). The Supreme Court, therefore, concluded that the Civil Rights Act of 1866, "clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality." *Id.* at 791. And, as a result, the Supreme Court has held that the language in the statute is understood to refer to "racial equality." *Id.* at 792. Moreover, the denial of civil rights must be "manifest in the formal expression of state law." *Chestnut v. New York*, 370 F.2d 1, 6 (2d Cir. 1966).

Therefore, to qualify for removal pursuant to 28 U.S.C. § 1443(1), a defendant must satisfy a two-prong test. *See Johnson v. Mississippi*, 421 U.S. 213, 220 (1975). First, Defendant

must show that it was denied a federally protected civil right on racial grounds. *See id.* Second, Defendant must show that it was denied the opportunity to bring or enforce the specified federal civil rights in a state court. *See id.*

Defendant argues the case is removable under § 1443(1) because Plaintiff's actions violate Title II of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. *See* Dkt. No. 26 at 18-24. The Court will address each cause of action, in turn.

### a. Title II

Title II of the Civil Rights Act of 1964 provides as follows:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin.

> No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 . . . , or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a-1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a-1 of this title.

42 U.S.C. §§ 2000a(a), 2000a-2.

Plaintiff argues that Defendant cannot bring a Title II claim on behalf of the asylum seekers. *See* Dkt. No. 22-1 at 11-12. Defendant argues otherwise, relying primarily on *Rachel v. State of Georgia*, 342 F.2d 336 (5th Cir. 1965), *aff'd*, 384 U.S. 780 (1966). *See* Dkt. No. 26 at 15-20.

In *Rachel*, the defendants were seeking to remove a state court action to federal court after they had been prosecuted for criminal trespass "when they sought to obtain service at privately

owned restaurants open to the general public in Atlanta, Georgia." *Rachel*, 384 U.S. at 783. The defendants alleged that the prosecutions against them were because they were African American or were accompanied by African American individuals when they sought to enter restaurants. *See id.* The Fifth Circuit permitted removal of the state court action to federal court under § 1443(1) because the removal petition alleged violations of Title II. *See Rachel*, 342 F.2d at 341. In affirming the Fifth Circuit's decision, the Supreme Court explained that Title II "is clearly a law conferring a specific right of racial equality, for . . . it guarantees to all the 'full and equal enjoyment' of the facilities of any place of public accommodation without discrimination on the ground of race." *Rachel*, 384 U.S. at 792-93 (footnote omitted). "By that language the Act plainly qualifies as a 'law providing for equal civil rights' within the meaning of 28 U.S.C. [§] 1443(1)." *Id.* In that case, "[t]he removal petition [was] fairly [] read to allege that the defendants w[ould] be brought to trial solely as the result of peaceful attempts to obtain service at places of public accommodation." *Id.* at 793 (footnote omitted).

On the same day that it affirmed *Rachel*, the Supreme Court also decided *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 810 (1966). In *Peacock*, the defendants were charged with obstructing public streets after engaging in efforts to encourage African American voter registration. *See id.* at 810-11. The *Peacock* Court explained its *Rachel* decision—"that removal of a state court trespass prosecution can be had under [§] 1443(1) upon a petition alleging that the prosecution stems exclusively from the petitioners' peaceful exercise of their right to equal accommodation in establishments covered by the Civil Rights Act of 1964." *Id.* at 824 (citations omitted). The Supreme Court further explained as follows:

> In *Rachel*[,] [Title II] gave the[ defendants]: (1) the federal statutory right to remain on the property of a restaurant proprietor after being ordered to leave, despite a state law making it a criminal offense not

> to leave, and (2) the further federal statutory right that no State should even attempt to prosecute them for their conduct.
>
> The Civil Rights Act of 1964 . . . thus specifically and uniquely conferred upon the defendants an absolute right to "violate" the explicit terms of the state criminal trespass law with the impunity under the conditions alleged in the *Rachel* removal petition, and any attempt by the State to make them answer in a court for this conceded "violation" would directly deny their federal right "in the courts of (the) State."

*Id.* at 826 (spacing added). The Supreme Court distinguished *Rachel* from *Peacock*, stating that "no federal law confers an absolute right on private citizens—on civil rights advocates, on [African American individuals], or on anybody else—to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman. Second, no federal law confers immunity from state prosecution on such charges." *Id.* at 826-27. The Supreme Court further clarified that "[i] is not enough to support removal under [§] 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court." *Id.* at 827. Rather, "[u]nder [§] 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Id.* at 828. In sum, "[t]he *Rachel* principle has been held to allow removal in cases where persons who claimed to be exercising their rights to equal accommodation were prosecuted on what allegedly were trumped up charges . . . ." *People of State of N. Y. v. Horelick*, 424 F.2d 697, 701 (2d Cir. 1970) (citations omitted).

Defendant argues that the enforcement of "the Onondaga County Executive Order . . . upon which the [Plaintiff's] Complaint relies, the public commentary by government officials, coupled with [Plaintiff's] civil action and the temporary restraining order it obtained, the second prong of 1443(1) removal is satisfied because section 203(c) of Title II is alleged to have been violated." Dkt. No. 26 at 8. Defendant states that its removal petition satisfies § 1443(1), as evidenced by the Supreme Court's decision in *Rachel*, because Defendant's hotel, Candlewood, is a place of public accommodation, Plaintiff's state court actions against Defendant are racially discriminatory, and the state court action "constitute[s] a denial of the rights conferred by the Civil Rights Act of 1964." *Id.* at 15-16. Defendant argues that it has standing to asserts claims on behalf of itself and asylum refugee hotel guests. *See id.* at 23.

Plaintiff does not dispute that Defendant's hotel is a place of public accommodation under Title II. *See* Dkt. No. 22-1. However, Plaintiff argues that Defendant "misconstrue[s] its obligations under federal law as rights. Candlewood has the obligation to refrain from discriminatory conduct that would violate Title II and Section 1981, but it does not point to any sections of those laws that bestow on Candlewood a concomitant right to be able to provide accommodations." Dkt. No. 30 at 12. Thus, Plaintiff contends Defendant "cannot plausibly allege that it is being denied a right under Section 203 because it is not punished for exercising a civil right." *Id.* Plaintiff also argues that Defendant cannot bring claims on behalf of the asylum refugees because Defendant has not established a close relationship to the refugees. *See* Dkt. No. 22-1 at 11-12.

The Court agrees with Plaintiff. First, Defendant cannot remove the action for alleged violations of Title II because Title II does not confer rights on Defendant, but duties. Under § 1443, "'[t]he removing party must show that the federal law confer[s] on [him] the right to engage

in the specific conduct with which [he was] charged.'" *Starmel v. New York*, No. 18-CV-602, 2018 WL 11025538, *2 (W.D.N.Y. June 8, 2018) (quoting *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, *2 (E.D.N.Y. Nov. 21, 2013)).  "'It is well settled that a plaintiff alleging a violation of section 2000a must allege facts which show [he or she] was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent.'" *Deide v. Day*, 676 F. Supp. 3d 196, 227 (S.D.N.Y. 2023) (quoting *Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc.*, No. 21-CV-5749, 2023 WL 2632461, *9 (E.D.N.Y. Mar. 24, 2023)).  In *Rachel*, the removing party consisted of individuals who were refused entry into, or told to leave, restaurants because of their race and who were then prosecuted for their conduct.  *See Rachel*, 384 U.S. at 783.

Defendant does not allege that it is being deprived of a right to use public accommodations based on its race; rather, Defendant contends that asylum seekers are being denied the right to use Defendant's hotel because of the asylum seekers' race.  *See* Dkt. No. 1 at ¶¶ 19-20.  This is insufficient for Defendant to state a Title II claim.  S*ee Hotel St. George Assocs. v. Morgenstern*, 819 F. Supp. 310, 317 (S.D.N.Y. 1993) ("[The p]laintiff . . .lacks standing to assert discrimination claims on behalf of the Black and Latino AIDS victims housed at the Hotel.  In other words, neither the federal statutes nor the New York statutes provide a cause of action for a property owner or provider of services against members of the community on behalf or residents or potential residents"); *Vlahadamis v. Kiernan*, 837 F. Supp. 2d 131, 142 (E.D.N.Y. 2011), *amended*, No. 08-CV-2876, 2011 WL 5156340 (E.D.N.Y. Oct. 28, 2011) (citations omitted) (dismissing Title II claim because, "[f]or the owners of an establishment (and the establishment itself) to bring suit against a municipality for punishing them for exercising a right to enjoy their

own establishment is, in a word, unusual. . . . [T]he pleading alleges that defendants punished

plaintiffs for allowing their customers to enjoy such a right").

Defendant likewise cannot bring a Title II claim on behalf of the asylum refugees. The

Supreme Court has "adhered to the rule that a party 'generally must assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499

(1975)). This is called "the 'prudential standing rule' that 'normally bars litigants from asserting

the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Keepers,*

*Inc. v. City of Milford*, 807 F.3d 24, 40 n.98 (2d Cir. 2015) (quoting *Rajamin v. Deutsche Bank*

*Nat'l Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014)). "'Typically, a plaintiff who asserts the claims of a

third party can obtain standing by establishing (1) a close relationship to the injured party and (2)

a barrier to the injured party's ability to assert its own interests.'" *Id.* at 41 n.106 (quoting *Smith v.*

*Hogan*, 794 F.3d 249, 255 (2d Cir. 2015)). "'[P]arties may not premise third-party standing on

relationships with hypothetical future clients' in general." *Gelb v. Niblack*, No. 22-CV-2601,

2023 WL 5806111, *3 (E.D.N.Y. Sept. 6, 2023) (quoting *Highview Props. D.H.F. Inc. v. Town of*

*Monroe*, 606 F. Supp. 3d 5, 20 (S.D.N.Y. 2022)); *see also Fenstermaker v. Obama*, 354 Fed.

Appx. 452, 455 (2d Cir. 2009); *BMG Monroe I, LLC v. Vill. of Monroe*, No. 20-CV-1357, 2022

WL 1094538, *9 (S.D.N.Y. Apr. 12, 2022), *aff'd*, 93 F.4th 595 (2d Cir. 2024).

Defendant attempts to distinguish two cases concerning hypothetical third-party

individuals, that Plaintiff argues supports remand. *See* Dkt. No. 26 at 24 n.9; Dkt. No. 22-1 at 11.

First, in *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 20 (S.D.N.Y. 2022),

the removing party failed to plead any facts supporting third party standing, including by failing

to identify any parties who had actually suffered an injury. Second and similarly, in

*Fenstermaker v. Obama*, 354 F. App'x 452, 455 (2d Cir. 2009), third-party standing could not be established by an attorney on behalf of 'hypothetical future clients.'"  Absent from Defendant's briefing is an explanation as to how the asylum refugees are not hypothetical.  It does not allege that it had to turn away any refugees.  Dkt. No. 1.  Defendant alleges only that it entered into a contract with New York City to provide housing in the future.  *See id.* at ¶¶ 37-38.[1]

To argue that it has third-party standing, Defendant cites *Craig v. Boren*, 429 U.S. 190 (1976); *Eisenstadt v. Baird*, 405 U.S. 438 (1972); *Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718 (S.D. Ind.), *aff'd*, 838 F.3d 902 (7th Cir. 2016); *Young Apts., Inc. v. Town of Jupiter, Fl.*, 529 F.3d 1027, 1041 (11th Cir. 2008); and *Wilson v. City of N. Little Rock*, 801 F.2d 316, 321 n.2 (8th Cir. 1986).  *See* Dkt. No. 26 at 23.  First, the cases from the Seventh, Eighth, and Eleventh Circuits are not binding on this Court.  Second, none of the cases support removal on the basis of third-party standing.

In *Craig v. Boren*, the Supreme Court concluded that a licensed beer vendor had standing to challenge an Oklahoma statute that prohibited the sale of beer above 3.2% alcohol content to males between the ages of 18 and 21.  *See Craig*, 429 U.S. at 194-97.  The Supreme Court held that the vendor had standing to challenge the statute because she was "entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail and the statutes remain in force."  *Id.* at 195 (quoting *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965)).  Similarly, in *Eisenstadt v. Baird*, "a state statute

---

[1] Defendant explains in a status letter submitted on July 2, 2025, that New York City has ceased its program, and argues that Plaintiff's action is moot.  *See* Dkt. No. 42.  Plaintiff asserts that "[w]hile the portion of [its] complaint seeking an injunction is moot, the causes of action for declaratory judgment are decidedly not."  Dkt. No. 43 at 1.  Because the Court is ordering remand of this action, the state court is better suited to determine whether there is a live case or controversy.

imposed legal duties and disabilities upon [Baird], who was convicted of distributing a package of contraceptive foam to a third party.  Since the statute was directed at Baird and penalized his conduct, the Court did not hesitate . . . to conclude that the 'case or controversy' requirement of Art. III was satisfied." *Id.* at 196 (quoting *Eisenstadt*, 405 U.S. at 443) (footnote omitted). Neither case benefits Defendant because it does not allege that its business would be adversely affected or diluted if it was unable to house refugees, nor does it allege that the Town Codes are unconstitutional.  *See* Dkt. No. 26.

Next, in *Exodus*, "Indiana Governor Mike Pence . . . directed Indiana state agencies to not pay federal grant funds to local refugee resettlement agencies, such as Exodus, for social services these agencies provide[d] to the Syrian refugees they help[ed] resettle in Indiana." *Exodus*, 165 F. Supp. 3d at 723.  Exodus sued Governor Pence and John Wernert, the Secretary of the Indiana Family and Social Services Administration, alleging "that the State's action was preempted by federal law and discriminated against Syrians in violation of the Equal Protection Clause of the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964." *Id.*  Exodus was a "non-profit corporation, [and] one of three local resettlement agencies in Indiana that is dedicated to assisting refugees who are selected for resettlement in Indiana." *Id.* at 725.  "Exodus argue[d] that it ha[d] Article III standing because (1) it [was] injured, and w[ould] continue to be injured, by failing to receive reimbursement from the State for social services it provides its Syrian refugee clients; (2) this injury was directly caused by the State's directive; and (3) the injury w[ould] be redressed by a favorable decision." *Id.* at 729.  "More specifically, Exodus present[ed] evidence that the State's decision to not reimburse Exodus w[ould] have significant repercussions on Exodus's ability to serve the refugee families to whom it is assigned and that, to make up for this

lost money, Exodus w[ould] have to take away services it provides in other areas to both its Syrian and non-Syrian refugee clients." *Id.*

The court concluded that Exodus had third-party standing because it had "a close relationship with its Syrian refugee clients. Its entire purpose and mission is to resettle refugees escaping dire circumstances so that they may establish 'self-sufficient lives in freedom and sanctuary for themselves and their families in Indiana.'" *Id.* at 732 (quotation omitted). "To do so, Exodus uses federal grant funds to provide its clients an entire range of services, including social, medical, and employment." *Id.* The court noted that "Exodus has a current, ongoing relationship with specific Syrian refugees it has resettled, or will soon resettle, in Indiana. Given this, and the singularity of interests between Exodus and its Syrian refugee clients, it is clear that Exodus is 'fully, or very nearly, as effective a proponent of the right' as its clients." *Id.* (quoting *Singleton v. Wulff*, 428 U.S. 106, 115 (1976)). It was also "clear that Syrian refugees have significant hindrances to bringing this suit on their own. For starters, as Exodus argues, they are newly arrived refugees, escaping political or religious persecution, who quite understandably have a desire to 'lay-low' and not draw the attention to themselves that this suit would necessarily bring." *Id.* Finally, the court explained that "a primary purpose of the [third-party standing] doctrine is 'to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative.'" *Id.* at 733 (quoting *Craig*, 429 U.S. at 193).

The underlying facts of *Exodus* are similar to this case in that asylum seekers are being relocated and a state or local government is assisting or interfering in those efforts. However, the differences between *Exodus* and this case are detrimental to Defendant's removal efforts.

First, Defendant's primary purpose is not to resettle asylum seekers, but to accommodate hotel guests.  *See* Dkt. No. 2.  Defendant does not contend that if it is unable to house asylum seekers, its income will be negatively impacted or it would have to divert its funds.  *See* Dkt. No. 1.  Second, Defendant does not contend that it has a "current, ongoing relationship" with any asylum seekers.  *Exodus*, 165 F. Supp. 3d at 732; *see also* Dkt. No. 1.

Third, Defendant does not contend that the asylum refuges are "escaping political or religious persecution, who quite understandably have a desire to 'lay-low' and not draw the attention to themselves that this suit would necessarily bring."  *Exodus*, 165 F. Supp. 3d at 732.  There is no evidence that the refugees could not assert the Title II claims on their own behalf.  *See* Dkt. No. 30 at 11; *see also Greco v. TikTok, Inc.*, No. 5:22-CV-00916, 2023 WL 3092861, *6 (N.D.N.Y. Apr. 26, 2023) (citing *Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 594 (S.D.N.Y. 2013) (concluding that the plaintiff did not have third-party standing because the plaintiff failed to prove or even allege "that some barrier or practical obstacle (*e.g.*, third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest")).[2]

Defendant also cites *Young Apts., Inc. v. Town of Jupiter, Fl.  See* Dkt. No. 26 at 23.  In that case, "Young Apartments claim[ed] that [the Town of] Jupiter, through the actions of town officials . . . [was] attempting to drive away the Town's growing population of Hispanic immigrant residents by targeting the landlords (including Young Apartments) who provide these residents with affordable housing."  *Young*, 529 F.3d at 1032.  "Young Apartments claim[ed] that it [] suffered significant financial injury as a result of Jupiter's discriminatory attempts to

---

[2] The Court is cognizant that since the filing of Plaintiff's original motion on July 11, 2023, the political and social landscape concerning asylum seekers has changed.

eliminate the affordable housing available to Hispanic immigrants. Young Apartments also assert[ed] that Jupiter's condemnation of some of Young Apartments' housing units breached the express terms of an agreement negotiated between the parties." *Id.*

The Eleventh Circuit concluded that Young Apartments had third-party standing to assert the claims on behalf of its Hispanic residents because "Young Apartments' pursuit of economic damages is sufficient to ensure that it would be an effective advocate in this dispute," and "the facts alleged in Young Apartments' complaint, if accurate, paint a scenario in which both the Hispanic immigrant tenants and their landlords were targeted by Jupiter officials, through a single course of conduct intended to drive the tenants out of town and the landlords out of business." *Id.* at 1042-43. The court explained that "Young Apartments is subject to enforcement under the Overcrowding Ordinance, and claims to have suffered significant financial injury under that ordinance, so that it has strong incentives to pursue this lawsuit." *Id.* at 1044.

Here, although Defendant is subject to the Town Code and is allegedly being targeted by the same course of conduct that is targeting asylum refugees, Defendant does not allege any financial injury to itself. *See* Dkt. No. 1. To support standing, Defendant provides the complaint from the Southern District of New York case—*Palisades Estates*—in which Defendant is a Plaintiff and Plaintiff is a Defendant. *See* Dkt. No. 26-3. The *Palisades Estates* complaint is brought by thirteen hotels against thirty-seven municipalities and municipal officials alleging identical claims to those Defendant raises in its removal petition: violations of, *inter alia*, Title II, 42 U.S.C. §§ 1981 and 1983, and the Equal Protection Clause on the basis that the municipalities are interfering with the hotel contracts to house asylum refugees who are being relocated out of New York City. *See id.* In that action, the plaintiffs seek not only injunctive relief, but damages from the interference with contracts. *See id.* at ¶¶ 15, 18, 22, 29, 382, 384; *see also* Dkt. No. 374

at 29.  Hurting Defendant's argument, the Southern District of New York recently dismissed the Title II claims for lack of standing.  *See Palisades Ests.*, 2025 WL 1295333, at *45.

The court did not address whether the hotel plaintiffs sufficiently stated an injury-in-fact because it concluded they lacked standing.  *See id.* at *27.  Nevertheless, here, Defendant does not allege the type of financial injuries that are alleged in other cases.  *See* Dkt. No. 26-3; *see also Young*, 529 F.3d at 1041; *Exodus*, 165 F. Supp. 3d at 739-40.  As to third-party standing to bring a Title II claim, the court explained that "[m]ore specifically, [the p]laintiffs have failed to show that there is 'some hindrance to the [Asylum Refugees'] ability to protect [their] own interests.'"  *Palisades Ests.*, 2025 WL 1295333, at *27 (quoting *Justin v. Tingling*, 712 F. Supp. 3d 462, 471(S.D.N.Y. Jan. 23, 2024)) (alterations in original).  The court, like this one, explained that application of the decisions in *Young Apartments* and *Exodus* supports the conclusion that the asylum refugees are not hindered in asserting their own claims.  *See id.* at *27-28.  The Southern District of New York also discussed *Deide v. Day*, in which "certain Asylum Refugees have asserted their rights in another matter before th[e Southern District of New York] with respect to the Rockland and Orange Orders."  *Palisades Ests.*, 2025 WL 1295333, at *27 (citing *Deide v. Day*, No. 23-CV-3954, 2024 WL 3471294, *1 (S.D.N.Y. July 19, 2024)).  The court explained that "the existence of *Deide, et al. v. Day, et al.* is sufficient to demonstrate the Asylum Refugees are not hindered in asserting their own rights."  *Id.* at *28.  This Court agrees that the existence of a case wherein asylum refugees are seeking to vindicate rights that are similar to those alleged by Defendant in this case supports a lack of third-party standing for Defendant's Title II claim.

Finally, Defendant cites *Wilson v. City of N. Little Rock*, which reiterates the general proposition that "[v]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek

access to their market or function."  801 F.2d 316, 324 n.2 (8th Cir. 1986) (citing *Boren*, 429 U.S. at 195); *see also* Dkt. No. 26 at 23-24.  The Court agrees with this proposition.  However, Defendant has not alleged enough facts to confer prudential or third-party standing in this case for the reasons already explained.  The asylum refugees seeking to utilize Defendant's services are hypothetical and Defendant has not alleged it has suffered any injuries.

As noted by the Southern District of New York, the conclusion concerning Defendant's purported Title II claim also applies to the § 1981 claim.  *See Palisades Ests.*, 2025 WL 1295333, at *28; *see also Deide*, 2023 WL 3842694, at *20 ("[C]ourts use the same analysis applicable to Section 1981 claims to Title II claims").

### b.   *42 U.S.C. § 1981(a)*

Section 1981 states as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Defendant argues it may assert a § 1981 claim on its own behalf.  *See* Dkt. No. 26 at 23.  "Both natural persons and corporations may raise a race discrimination claim under [§] 1981." *Henderson v. Golden Corral Franchising Sys., Inc.*, 663 F. Supp. 3d 313, 327 (S.D.N.Y. 2023) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 473 n.1 (2006)).  Generally, "[t]o establish a claim for racial discrimination pursuant to [§] 1981, a plaintiff must allege: (1) that he or she is a member of a protected class; (2) the defendant's intent to discriminate on the basis of

race; and (3) discrimination concerning one of the statute's enumerated activities." *Id.* (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)).

"[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.' Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *McDonald*, 546 U.S. at 479-80. "Additionally, a plaintiff does not have to be a member of a racial minority to bring a claim under [§] 1981; a non-minority plaintiff can allege personal injury stemming from a defendant's discriminatory conduct against a racial minority." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 476 (S.D.N.Y. 2013) (citing *Pisello v. Town of Brookhaven*, 933 F. Supp. 202, 215 (E.D.N.Y.1996)); *see also Hill v. City of New York*, No. 13-CV-6147, 2019 WL 1900503, *4 (E.D.N.Y. Apr. 29, 2019) ("[T]he non-minority 911 Operators have suffered injuries, such as the cancellation of their sick time or the imposition of mandatory double- and overtime-shifts, as a result of Defendants' alleged racial discrimination towards their majority-minority unit. Therefore, even though the non-minority 911 Operators are not themselves part of a protected class, they nonetheless have suffered personal injuries as a result of discrimination aimed at a protected class. This is enough to confer standing to the non-minority 911 Operators"); *Santulli v. Town of Brookhaven*, No. 08-CV-1355, 2009 WL 10709085, *8 (E.D.N.Y. Sept. 16, 2009) (concluding that the plaintiffs have standing under § 1981 because the "defendants intimidated some tenants who are racial minorities and contacted the Department of Social Services to tell them that the plaintiffs should not receive rent for the Section 8 tenants and that no inspections were necessary; that defendants excessively ticketed plaintiffs for code violations for rental properties occupied by racial minorities with whom

19

plaintiffs had rental contracts; similarly situated properties rented to non-minorities by non-members of the Coalition were not ticketed despite the existence of similar infractions").

Because a non-minority can allege harm on behalf of a minority under § 1981, it is plausible that the first element of § 1443(1)—that it was denied a federally protected civil right on racial grounds—is satisfied. *See* 28 U.S.C. § 1443(1). However, to remove a case under § 1443, Defendant must show that it was denied the opportunity to bring or enforce the specified federal civil right in a state court. *See id.*; *see also Town of Newburgh, New York v. Newburgh EOM LLC*, No. 24-CV-5059, 2025 WL 934381, *4 (S.D.N.Y. Mar. 27, 2025) ("[I]t must appear on the face of the notice that the removal petitioner is denied or cannot enforce the specified federal rights in the courts of (the) [sic] State") (quotation and quotation marks omitted); *Crown Asset Mgmt., LLC v. Cunningham*, No. 1:22-CV-48, 2022 WL 1297052, *1 (N.D.N.Y. Apr. 22, 2022); *People of State of N. Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965). As Plaintiff asserts, there is no reason why Defendant could not raise a § 1981 claim in state court. *See* Dkt. No. 22-1 at 13.

Defendant argues that its right to enforce contracts is being denied by the executive order and temporary restraining order entered in state court, but it does not assert an inability to enforce its rights under § 1981 in state court. *See* Dkt. No. 26 at 18, 28.

Section 1443(1) "normally requires that the 'denial be manifest in a formal expression of state law,' . . . such as a state legislative or constitutional provision, 'rather than a denial first made manifest in the trial of the case.'" *Johnson*, 421 U.S. at 219 (quoting *Rachel*, 384 U.S. at 803-04; *see also New York v. Smith*, 952 F. Supp. 2d 426, 432 (E.D.N.Y. 2013) ("Under Section 1443, a defendant's federal rights are protected by the state courts unless the defendant can show that 'by reason of the operation of a pervasive and explicit state or federal law . . . those rights will

20

inevitably be denied by the very act of bringing the defendant to trial in the state court) (quotation omitted).  Defendant does not proffer a formal expression of state law prohibiting it from bringing a § 1981 claim in state court.  *See* Dkt. No. 26; *see also Johnson*, 421 U.S. at 222 (explaining that in the *Peacock* Supreme Court case, supporting remand, "there was no 'federal statutory right that no State should even attempt to prosecute them for their conduct'") (quoting *Peacock*, 384 U.S. at 826).  Indeed, any such argument is unlikely to be successful.

"[T]here is a 'deeply rooted presumption in favor of concurrent state court jurisdiction,' rebuttable if 'Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim.'"  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378 (2012) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990)).  "The presumption of concurrent state-court jurisdiction . . . can be overcome 'by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.'"  *Id.* (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981)).

Defendant does not present any authority to establish that federal courts have exclusive jurisdiction over § 1981 claims.  *See* Dkt. No. 26.  The Court is not aware of a Second Circuit case that has commented on the issue.  However, courts across the country, including a district court in the Second Circuit, have concluded that state and federal courts have concurrent jurisdiction over § 1981 claims.  *See Ayala v. Gerald J. Picaso, Inc.*, No. 01-CV-5971, 2002 WL 109538, *2 (S.D.N.Y. Jan. 28, 2002); *Stafford v. Avenal Cmty. Health Ctr.*, No. 1:19-CV-168, 2019 WL 4013945, *7 (E.D. Cal. Aug. 26, 2019) (citing *DeHorney v. Bank of America Nat'l Trust & Savings Ass'n*, 879 F.2d 459, 463 (9th Cir. 1989)); *Harrison v. Deere & Co.*, No. 4:11-CV-4067, 2012 WL 12895020, *6 (C.D. Ill. Sept. 28, 2012), *aff'd*, 533 Fed. Appx. 644 (7th Cir. 2013) (citing, *inter alia*, *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 826 (1990)); *Joell v.*

*Nw. Hum. Servs.*, No. 13-CV-3549, 2013 WL 5823738, *6 (E.D. Pa. Oct. 29, 2013). Thus,

because Defendant can bring a claim to enforce the rights guaranteed by § 1981 in state court, it

cannot meet the second prong of § 1443(1). Thus, removal is not warranted under § 1443(1).

### 2. Section 1441

Alternatively, Defendant argues that removal is appropriate under 28 U.S.C. § 1441. *See*

Dkt. No. 26 at 24-29. Section 1441 provides as follows:

> Except as otherwise expressly provided by Act of Congress, any
> civil action brought in a State court of which the district courts of
> the United States have original jurisdiction, may be removed by the
> defendant or the defendants, to the district court of the United States
> for the district and division embracing the place where such action
> is pending.

28 U.S.C. § 1441(a). Defendant asserts that this case raises federal questions under Title II, §

1981, and the Fourteenth Amendment. *See* Dkt. No. 26 at 26. Plaintiff argues that its complaint

does not raise federal claims; thus, the complaint cannot be removed under § 1441(a). *See* Dkt.

No. 22-1 at 17-19. Defendant relies on *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,

545 U.S. 308 (2005), to argue otherwise. *See* Dkt. No. 26 at 24-29.

"In determining whether a petition establishes the existence of a federal question, removal

based on federal question jurisdiction is improper unless a federal claim appears on the face of a

well-pleaded complaint." *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d

Cir. 1988) (citations omitted). "Allegations made for the first time in a removal petition [] cannot

support the removal of a case on federal question grounds." *Id.*; *see also Franchise Tax Bd. of*

*State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 10-11 (1983)

(quotations omitted) ("[A] federal court does not have original jurisdiction over a case in which

the complaint presents a state-law cause of action, but also asserts that federal law deprives the

defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim").

There are "exactly '[*t*]*hree* situations [that] exist in which a complaint that does not allege a federal cause of action may nonetheless 'arise under' federal law for purposes of subject[-]matter jurisdiction.'" *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 133 (2d Cir. 2023) (quoting *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014)). "They are: (1) 'if Congress expressly provides, by statute, for removal of state[-]law claims'; (2) 'if the state[-]law claims are completely preempted by federal law'; and (3) 'in certain cases if the vindication of a state[-]law right necessarily turns on a question of federal law.'" *Id.* at 133 (quotation omitted). To determine whether a pleading falls under one of the three exceptions, the Court "appl[ies] the framework set forth by the Supreme Court in *Grable* and later streamlined in *Gunn*." *Id.* at 140; *see also Grable*, 545 U.S. at 312; *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

"For a 'federal issue' to be 'necessarily raised,' the 'mere *presence* of a federal issue in a state cause of action' is insufficient; the pertinent 'question of federal law' must be 'a *necessary element* of one of the well-pleaded state claims.'" *Tong*, 83 F.4th at 140 (quoting *Gunn*, 568 U.S. at 258; *City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 176 (2d Cir. 2004)). "A 'state-law claim "necessarily" raises federal questions where the claim is affirmatively "premised" on a violation of federal law.'" *Id.* (quoting *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016)). "Conversely, if a 'court could . . . resolve[ ] the case without reaching the federal issues,' then 'the claims do not necessarily raise a federal issue.'" *Id.* (quoting *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140-41 (2d Cir. 2012)).

An issue of federal law is substantial if the issue "is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'"

23

*Tantaros v. Fox News Network*, 12 F.4th 135, 145 (2d Cir. 2021) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)).  Finally, even if the state court action raises a substantial federal issue, "federal jurisdiction lies only if adjudication in a federal forum would be consistent with the 'congressionally approved balance of state and federal judicial responsibilities,' defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'"  *Id.* (quoting *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016)).

Defendant argues that although "the Second Circuit has applied the *Grable* doctrine where a state action implicated or relied upon a federal standard or policy," "*Grable* does not describe or require such limited application.  Rather, in refusing to craft a bright-line rule, the Supreme Court recognized that federal courts have discretion to accept exceptional cases, the resolution of which implicate significant federal issues."  Dkt. No. 26 at 26 (citations omitted).  Defendant asks that the Court "take judicial notice of the fact that Onondaga County and the [T]own of Salina situated therein have brought coordinated actions to prevent all hotels and motels in Onondaga—by selective and pretextual enforcement of local zoning laws—from providing public accommodations to the Asylum Refugees" *Id.*  Defendant notes that "this case necessarily raises substantial federal issues, including" whether "the civil rights of Defendant who have a right and obligation to provide public accommodations to their hotel guests under Title II and a right to contract for that purpose under 1981[can] be vitiated by discriminatory application of facially neutral zoning laws."  *Id.* at 27.  Insofar as Defendant raises these federal issues in defense to Plaintiff's complaint, Defendant contends this "was also the case in *Grable*, where the appellant there argued that federal jurisdiction was not satisfied because the 'dispute of a federal question was not in fact in [the plaintiff's c]omplaint, but rather in [the defendant's] defense.'"  *Id.* (quoting

Appellant's Brief submitted in *Gable & Sons Metal Products, Inc. v. Darue Engineering*, 2005 WL 482909, *14).

In *Grable*, the Supreme Court outlined "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. *Grable* involved a quiet title action brought in state court under state law between two private parties. *See id.* The Supreme Court permitted removal because the action related to contested federal tax laws. *See id.* at 310. The *Grable* court held "that the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress." *Id.*

As stated by the Second Circuit, "federal jurisdiction exists if a court *must* apply *federal law* to *the plaintiff's claim* in order to decide the case." *Tantaros*, 12 F.4th at 141 (citing *Gunn*, 568 U.S. at 259) (emphasis added); *see also* Dkt. No. 30 at 14. It is true that in the cases cited by Defendant, including *Grable*, the federal issues were first raised as a defense and not in the plaintiff's complaint, and removal was permitted. *See* Dkt. No. 26 at 27; *see also In re Facebook, Inc., IPO Secs. and Derivative Litig.*, 922 F. Supp. 2d 475, 480-84 (SDNY 2013); *Tantaros*, 12 F.4th at 146; *Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp. 3d 265, 276 (E.D. La 2021); *Hodges v. Demchuk*, 866 F. Supp. 730, 733 (S.D.N.Y. 1994).

However, in each of those cases, resolution of the state law issue *depended on* resolution of the federal law question. *See Facebook*, 922 F. Supp. 2d at 480-85 (noting "'that state law claims against self-regulatory organizations are preempted by the Exchange Act'" and concluding

that the state law claims required determining compliance with "the rules and regulations promulgated by the SEC under the Exchange Act") (citation omitted); *Tantaros*, 12 F.4th at 146 (concluding that a state statute "requires a threshold showing that the plaintiff's claim complies with the" Federal Arbitration Act); *Police Ass'n of New Orleans*, 572 F. Supp. 3d at 273-76 (determining that removal was appropriate because the state court action concerned a "consent decree" that was "implemented pursuant" to federal law and "[t]his federal issue is necessary to the resolution of the case because, although the petition sets forth a state-law cause of action, it essentially alleges the [] provisions of the Consent Decree were beyond the authority of the Court under 42 U.S.C. § 14141 and that these provisions are unenforceable because they conflict with state law"); *Hodges*, 866 F. Supp. at 733 ("[T]he federal element of [the] plaintiff's state claims is certainly substantial since the alleged unlawful disclosures of [the] plaintiff's psychiatric and medical records occurred in the course of conducting discovery in the Federal Actions. . . . Federal practice and procedure, therefore, is at the heart of [the] plaintiff's state law claims, as federal rules governing discovery necessarily will determine the propriety of any disclosures of [the] plaintiff's confidential records by the various defendants").  The Second Circuit recently restated the relevant standard as follows:

> [F]ederal-question jurisdiction generally "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint" and cannot be triggered "on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."

*Tong*, 83 F.4th at 132 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)).

Plaintiff's state court complaint raises claims pursuant to New York Town Law Section

135, alleging violations of Town Code Sections 235-53A and 235-50A. *See* Dkt. No. 2 at ¶¶ 7,

24-33. Town code Section 135 states, in part, as follows:

> A violation of any ordinance, rule or regulation adopted by the town
> board pursuant to this chapter is hereby declared to be a
> misdemeanor except as otherwise provided by law . . . .
>
> The town board may also maintain an action or proceeding in the
> name of the town in a court of competent jurisdiction to compel
> compliance with or to restrain by injunction the violation of any
> such ordinance, rule or regulation, notwithstanding that the
> ordinance, rule or regulation may provide a penalty or other
> punishment for such violation.

N.Y. Town Law § 135(1) (spacing added). Salina Town Code Section 235-53A provides as

follows: "It shall be unlawful for any person, firm or corporation to: [] Allow any building or land

to be used or occupied or any building or part thereof to be erected, moved, extended or altered

except in conformity with the regulations herein set forth for the district in which it is located."

Article X Violations and Penalties, Part II, General Legislation, Zoning,

https://ecode360.com/11094163#11094163 (last visited July 14, 2025). Salina Town Code

Section 235-50A provides as follows: "No land shall be occupied and no building hereafter

erected, altered or extended shall be used or changed in use until a certificate of occupancy shall

have been issued by the Director of Planning and Development, stating that the building or

proposed use thereof comply with the provisions of this chapter." Article VIII Administration and

Enforcement, Part II, General Legislation/Zoning, https://ecode360.com/11094149#11094149

(last visited July 14, 2025).

There is no part of the Town codes that contains a federal element or requires resolution of

a federal question. *See Tong*, 833 F.4th at 140 (quotation omitted) ("[T]he pertinent 'question of

federal law' must be 'a necessary element of one of the well-pleaded state claims'").  Therefore, because Defendant has not met its burden to prove that Plaintiff's complaint "necessarily turns on a question of federal law," *id.*, removal under § 1441 is not appropriate.  Plaintiff's motion to remand is granted.

**B.    Entitlement to a Hearing**

Defendant contends that if the Court grants Plaintiff's motion to remand, the Court should hold "an evidentiary hearing to establish the Removal Petition's allegations to confirm 1443(1) removal jurisdiction."  Dkt. No. 26 at 22.  As Plaintiff states, Defendant does not present any Second Circuit case in which an evidentiary hearing was held under the present circumstances. *See* Dkt. No. 30 at 13 n.7.  Defendant relies on *Rachel*, 342 F.2d at 343 and *New Haven Firefighters Local* 825, 120 F. Supp. 3d at 187-88, 203, to argue otherwise.  *See* Dkt. No. 26 at 22-23.

In *Rachel*, the Supreme Court determined that a hearing was warranted because "the defendants . . . have had no opportunity to establish that they were ordered to leave the restaurant facilities solely for racial reasons.  If the Federal District Court finds that allegation true, the defendants' right to removal under [§] 1443(1) will be clear."  *Rachel*, 384 U.S. at 805.

In *New Haven*, individual firefighters sued the city they worked for as a result of alleged racial discrimination.  *See New Haven Firefighters Loc. 825 v. City of New Haven*, 120 F. Supp. 3d 178, 180 (D. Conn. 2015).  The court ordered "an evidentiary hearing for the purpose of determining whether [one p]laintiff [] can prove the federal civil rights claims upon which he bases his prayer for injunctive relief."  *Id.* at 206.  The court stated that "[t][his hearing will be held in order to comply with the procedures described by the Supreme Court in *Rachel*, 384 U.S. at 805 . . . ."  *Id.*  The court concluded as such after determining that the plaintiff sufficiently

alleged a plausible retaliation claim under 42 U.S.C. § 2000e-3(a) because he claimed that the defendant's state court action "constituted an act of retaliation motivated by racial discrimination, in violation of Title VII." *Id.* at 188.

Although the Fifth Circuit in *Rachel* and the district court in *New Haven* ordered hearings, those cases concerned plaintiffs who alleged direct exclusion from places or activities based on their race. There was no dispute regarding standing. Here, as in *Peacock*, Defendant has not established that Title II confers on it a federal right. Defendant repeatedly notes that Title II "contemplates relief in the federal courts from state prosecutions which interfere with the rights guaranteed under Title II." Dkt. No. 26 at 27. Defendant notes that "the Removal Petition further alleges that Title II creates a federal statutory right . . . ." *Id.* at 13.

However, as explained, Title II does not confer on Defendant a federal statutory right, but a duty. A hearing would not alter that conclusion. Insofar as Defendant raises Equal Protection and § 1981 claims, and those laws confer rights on Defendant, Defendant has not established that such rights cannot be raised in state court. A hearing would not alter that conclusion. Because Defendant has not proven that the state court complaint raises a federal claim it cannot adjudicate in state court, it is not entitled to a fact-finding hearing.

## C.    Attorneys' Fees

Plaintiff seeks attorneys' fees for expenses related to its motion to remand, arguing that Defendant's removal was objectively unreasonable. *See* Dkt. No. 22-1 at 19-20; Dkt. No. 30 at 15. Defendant does not respond to Plaintiff's request. *See* Dkt. No. 26.

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." A court may exercise its discretion to award fees and costs "where the removing party lacked an

objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "'A basis for removal is objectively reasonable if the removing party had a colorable argument that removal was proper.'" *Tamm Consulting v. Cincinnati Ins. Co.*, No. 18-CV-11415, 2020 WL 1144713, *4 (S.D.N.Y. Mar. 9, 2020), *aff'd*, 858 Fed. Appx. 412 (2d Cir. 2021) (quoting *Nguyen v. Am. Express Co.*, 282 F. Supp. 3d 677, 683 (S.D.N.Y. 2017)).  The Court should consider "overall fairness given the nature of the case, the circumstances of remand, and the effect on the parties," *Morgan Guaranty Trust Company of New York v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) (internal quotations omitted), to prevent "abuse [and] unnecessary expense" because of frivolous or improper removal.  *Circle Indus. USA, Inc. v. Parke Constr. Group*, 183 F.3d 105, 109 (2d Cir. 1999).

"[I]t is well established that a defendant may not evade [the well-pleaded-complaint] rule by raising a federal question in its responsive pleadings and then attempting to remove on that basis." *Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (citing *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831-32 (2002)).  However, some courts have declined an award of attorney's fees because "[t]he defendants raised colorable arguments that the plaintiffs' claims satisfied the *Grable* test, and the Supreme Court itself has recognized the 'general confusion on [the] question' of whether a particular state law claim arises under federal law." *Doe 1 v. Starpoint Cent. Sch. Dist.*, No. 23-CV-207, 2023 WL 2859134, *7 (W.D.N.Y. Apr. 10, 2023) (quoting *Gunn*, 568 U.S. at 258); *see also Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 421 (S.D.N.Y. 2020).

It is true that "[c]ourts have often found removal objectively unreasonable where the removing defendant seeks removal based on an obviously incorrect legal standard." *Parks Heritage Fed. Credit Union v. Fiserv Sols., Inc.*, No. 16-CV-7734, 2017 WL 74280, *7 (S.D.N.Y.

Jan. 4, 2017) (collecting cases).  However, "[t]o avoid chilling future litigation, courts have declined to award attorneys' fees in cases that are 'novel or close' . . . ."  *Nwosuocha v. Glover*, No. 21-CV-4047, 2025 WL 560846, *5 (S.D.N.Y. Feb. 20, 2025) (quoting *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001)).  Although Defendant removed Plaintiff's complaint based on federal law defenses, courts have permitted removal based on federal claims raised in defense to a complaint.  *See Grable*, 545 U.S. at 312.  Also, as discussed throughout this Memorandum-Decision and Order, other courts have permitted claims to be brought on refugees' behalf, *see Young*, 529 F.3d at 1032, *Exodus*, 165 F. Supp. 3d at 732, and a non-minority can allege harm on behalf of a minority under § 1981.  *See Robledo*, 965 F. Supp. 2d at 476.  Defendant does not present a single case to this Court which has permitted removal under the precise circumstances advocated for by Defendant, but the Court does not find Defendant's arguments to be entirely unreasonable.  Therefore, the Court denies Plaintiff's request for attorneys' fees.[3]

## IV. CONCLUSION

Upon careful consideration of the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** the Plaintiff's motion to remand (Dkt. No. 22) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall **REMAND** this action to the Onondaga County New York State Supreme Court; and the Court further

---

[3] Insofar as the Southern District of New York in *Palisades Estate* agreed that a hotel lacks standing to bring a Title II claim on behalf of asylum refugees, *see Palisades Ests.*, 2025 WL 1295333, at *28, *45, Defendant informs the Court in a letter that it and the hotel plaintiffs have sought reconsideration on that issue.  *See* Dkt. No. 42 at 1.

**ORDERS** that Plaintiff's request for attorneys' fees is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  July 22, 2025
       Albany, New York

Mae A. D'Agostino
U.S. District Judge